1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

LAURA A. DOYLE,                    )    1:08-CV-1350 AWI JMD HC
                                   )
10          Petitioner,            )    FINDINGS AND RECOMMENDATION
                                   )    REGARDING PETITION FOR WRIT OF
11    v.                           )    HABEAS CORPUS
                                   )
12                                 )
TINA HORNBECK,                     )
13                                 )
            Respondent.            )
14 _____ )

15
16          Petitioner is a State prisoner proceeding *pro se* with a petition for writ of habeas corpus

17 pursuant to 28 U.S.C. § 2254.

18                          **PROCEDURAL HISTORY**

19          Petitioner is currently in the custody of the California Department of Corrections and

20 Rehabilitation, pursuant to a judgment of the Los Angeles County Superior Court on January 31,

21 1990. (Answer at 1). Petitioner pled no contest to second degree murder and received a sentence of

22 fifteen-years-to-life. (Pet. at 2).

23          Petitioner is not challenging her conviction; rather, Petitioner challenges the denial of her

24 parole by the California Board of Parole Hearings (the "Board"). (Pet. at 3; Answer at 1). Petitioner

25 appeared before the Board for a parole consideration hearing on December 28, 2006. (Answer at 1).

26 The Board found Petitioner unsuitable for parole. (Id)

27          Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court

28 on April 19, 2007, challenging the Board's denial of her parole. (Pet. at 3). The Los Angeles

County Superior Court issued a reasoned decision on November 8, 2007, upholding the Board's

1   decision.  (*See* Answer Ex. B).

2        Petitioner then filed a petition for writ of habeas corpus in the California Court of Appeal.

3   (Answer Ex. C).  The Court of Appeal summarily denied the petition on January 8, 2008.  (Answer

4   Ex. D)

5        Petitioner filed a petition for writ of habeas corpus in the California Supreme Court,

6   challenging the Board's denial on the same grounds she had previously raised in the Superior Court

7   and the Court of Appeal.  (Answer Ex. E).  The California Supreme Court summarily denied the

8   petition on July 9, 2008.  (Answer Ex. F).

9        On September 11, 2008, Petitioner filed the instant petition in this Court.  Petitioner raises

10  three grounds for relief in the petition, all relating to the Board's denial of parole.

11       On January 2, 2009, Respondent filed an answer to the petition.

12       On January 20, 2009, Petitioner filed a reply to the answer.

13                              **FACTUAL BACKGROUND**

14       As the facts of the commitment offense are relevant to determining whether Petitioner is

15  suitable for parole, the Court recites the facts as stated in the record of the parole hearing and as

16  found by the Los Angeles County Superior Court.  *See* Cal. Code Regs., tit. 15, § 2402(c)(1).  The

17  Board first incorporated into the record the Statement of Facts from the California Court of Appeal

18  decision, dated February 14, 1994:

19          In 1985, Ceverson [Petitioner's co-defendant] were [sic] Doyle were friends
20      of Michelle Avilla and who they had known for many years but were jealous of her
        popularity with boys.  When Doyle saw her former boyfriend, Victor Amilla, with
        Avilla in July of 1985, she threatened to kill Avilla.  Ceverson was going with Randy
21      Hernandez in 1984 and []1985.  In July of 1985, she urged him to throw lighted
        firecrackers at Avilla to show his loyalty to Ceverson, and he did so.  Ceverson,
22      nevertheless, accused Fernandez and Avilla of flirting, and sad that Avilla was going
        to ger herself mixed up with somebody that was going to kill her for what she did.
23      Ceverson confronted Avilla about Fernandez and started a fight with her.  In
        September of 1985 Ceverson told Avilla's mother that her daughter was a tramp, and
24      she also approached Avilla in a park, yelled at her and slapped her face.  In October of
        1985, Ceverson and Doyle were considerably larger than Avilla.  Ceverson weighed
25      200 pounds and was five feet two inches tall.  Doyle was five feet six inches tall and
        weighed 135 pounds.  Avilla, by contrast was petite, four feet ten inches and a
26      hundred—and 97 pounds.

27          [The events of] the afternoon of October 1st of 1985 were recounted by Eva
        Chirumbolo...a friend of Avilla, Doyle, and Ceverson.  She testified that the four girls
28      drove in two cars to the Colby Ranch area of Angeles National Forest.  Once there,
        Doyle and Ceverson accused Avilla of promiscuity.  The group then walked between

100 to 200 yards down a path to a creek. Avilla cried, and Doyle continued to berate her. Doyle grabbed Avilla's hair and cut some of it off. Doyle walked into the creek and told Avilla to follow. Ceverson nudged Avilla toward the creek and Doyle grabbed Avilla's wrist. At that point Chirumbolo became frightened and start back [up] the trail...Ceverson was at the edge of the water and demanded the keys from her [Chirumbolo]. After Chriumbolo had run to where the cars were parked, she heard Avilla scream for help as though she was gasping for air. When Ceverson came up to the parking area, she told Chirumbolo she had to hide or cover the body, and then drove away. When Doyle returned a few minutes later wet, she told Chirumbolo that she had killed Avilla and that Avilla deserved it. Shortly after Avilla's death, Ceverson moved into the home of Avilla's mother and accused Fernandez of murdering Avilla. She told some friends to kill him. In December of 1985 Ceverson accused others of killing Avilla.

(Parole Hearing Transcript, at 12-14).

The Board then proceed to read into the record Petitioner's version of events, obtained from a previous parole hearing, which stated:

I picked up Michelle, Missy, around four p.m. We went to the mountains. That's the best place to party at my age. My codefendant and Eva drove up behind us in another car. Michelle and I were drinking beer. We have about five or six apiece. In the mountains an argument started between three of us about boys. Then Karen [Ceverson] and Eva took turns cutting Michelle's hair. Eva ran back to the car for some reason. I became frightened and unsure. I got into the water. Karen pushed Michelle into the water and I held her down under the water until she died.

(Id. at 14-15).

Additional facts about the commitment offense that were brought out in the record included: Petitioner and codefendant left the victim's body under a log; over two years elapsed from the time of the crime to when Petitioner and her codefendants were arrested; and Petitioner and her codefendants had continual contact with the victim's mother, giving the family false leads as to their daughter's whereabouts (Id. at 71-72).

## DISCUSSION

## I.    Jurisdiction and Venue

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that she suffered violations of her rights, as guaranteed by the United States Constitution, stemming from the Board's denial of parole. Petitioner is currently incarcerated at Chowchilla Valley State Prison for Women, which is located in Madera

1   County.  Madera County is within the Eastern District of California.  28 U.S.C. § 84(b).  Thus, the

2   Court has jurisdiction over and is the proper venue for this action.  *See* 28 U.S.C. § 2241(d).

3   **II.      ADEPA Standard of Review**

4        All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and

5   Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996.  *Lindh v.*

6   *Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert.*

7   *denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th

8   Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320

9   (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was

10  filed in 2008 and is consequently governed by AEDPA's provisions.  *Lockyer v. Andrade*, 538 U.S.

11  63, 70 (2003).

12       While Petitioner does not challenge her underlying conviction, the fact that Petitioner's

13  custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the exclusive

14  vehicle for Petitioner's habeas petition.  *Sass v. California Board of Prison Terms*, 461 F.3d 1123,

15  1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in

16  holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State

17  court judgment even though she is challenging the denial of her parole).  Under AEDPA, a petition

18  for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision

19  denying relief was 'contrary to, or involved an unreasonable application of, clearly established

20  federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d

21  846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71.

22       As a threshold matter, this Court must "first decide what constitutes 'clearly established

23  federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71

24  (quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established federal law," this

25  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of

26  the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other

27  words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or

28  principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

1  Finally, this Court must consider whether the State court's decision was "contrary to, or

2  involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72,

3  (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant

4  the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on

5  a question of law or if the State court decides a case differently than [the] Court has on a set of

6  materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72.

7  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State

8  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

9  applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

10  Petitioner bears the burden of establishing that the State court's decision is contrary to or

11  involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*,

12  94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,

13  Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court

14  decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003);

15  *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

16  AEDPA requires that a federal habeas court give considerable deference to State court

17  decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).

18  Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v.*

19  *Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537

20  U.S. 1149 (2003).

21  **III.     Review of Petitioner's Claim**

22  Petitioner raises three grounds for relief, all challenging the Board's decision.  (*See* Pet. M. &

23  A.).  In her first ground for relief, Petitioner contends that there was no evidence to support the

24  Board's denial of parole and the Board's characterization of the commitment offense was erroneous.

25  (Pet. at 5).  Petitioner's second ground for relief alleges that there was no legal basis for the parole

26  board's contention that Petitioner possessed an unstable social history.  (Id).  Petitioner asserts, as

27  her third ground for relief, that her due process rights were violated by the Board's reliance on

28  Petitioner's parole plans to find her unsuitable as this reliance was arbitrary and capricious.  (Id. at

6).   Inherent in each argument is Petitioner's contention that the Board's decision was not supported by some evidence.

The Court's main inquiry is whether the State court's decision, upholding the denial of parole, constitutes an unreasonable application of clearly established federal law.   *See Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254).

### A.   *Legal Standard for Denial of Parole*

"We analyze a due process claim in two steps.  '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"   *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).   In briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary.  (Answer at 2-3).  The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a presumption "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'"   *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole).  California Penal Code section 3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause."   *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003).  Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards.   *See Greenholtz*, 442 U.S. at 12.  Respondent contends

1    that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and

2    for the Board to state their reasons for denial.  (Answer at 3).  This contention is based on the

3    argument that the "some evidence" standard does not constitute clearly established federal law and is

4    not applicable to parole denials.  (*Id*. at 5).

5         Respondent is correct in one respect; a parole release determination is not subject to all of the

6    due process protections of an adversarial proceeding.  *See Pedro v. Oregon Parole Board*, 825 F.2d

7    1396, 1398-99 (9th Cir. 1987).  "[S]ince the setting of a minimum term is not part of a criminal

8    prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally

9    mandated, even when a protected liberty interest exists."  *Id*. at 1399; *Jancsek v. Oregon Bd. of*

10   *Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).  Thus, an inmate is entitled to receive advance written

11   notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of

12   qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court

13   notes that Petitioner does not allege that she was deprived of any of these procedural safeguards.

14        The Ninth Circuit has consistently recognized that a prisoner's due process rights are

15   implicated where there is no evidence to support the denial of parole.  *Irons*, 505 F.3d at 851; *see*

16   *also Sass*, 461 F.3d at 1128-1129.  "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445

17   (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum

18   requirements of procedural due process' unless the findings of the prison disciplinary board are

19   supported by some evidence in the record.'"  *Sass*, 461 F.3d at 1128 (citations omitted).  The Ninth

20   Circuit has held that the same standard of "some evidence" that applies to the revocation of good

21   time also extends to parole determinations and that this same standard of judicial review applies to

22   habeas petitions regarding parole denials.  *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129.  This

23   evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without

24   imposing undue administrative burdens or threatening institutional interests.  *Hill*, 472 U.S. at 455.

25   Thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of parole.

26        The inquiry of "whether a state parole board's suitability determination was supported by

27   'some evidence'" is framed by the California statutes and regulations governing parole suitability.

28   *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915.  Significantly, California's Supreme Court has

consistently found that in order to comport with due process, the Board's denial of parole must be supported by "some evidence." *In re Dannenberg*, 34 Cal.4th 1061, 1071 (Cal. 2005); *In re Rosenkrantz*, 26 Cal.4th 616, 625-626 (Cal. 2002) (applying some evidence standard to governor's authority, under Article V, section 8(b) of the California Constitution, to reverse a grant of parole). A federal habeas court defers to a state court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) and *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), for the proposition that, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

The dispositive inquiry now before this Court is whether the Superior Court's decision was an unreasonable application of the "some evidence" standard, an inquiry that is framed by the statutes and regulations governing parole suitability determinations in California. *Irons*, 505 F.3d at 851; *Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime."[1] Cal. Code Regs., tit. 15, § 2402(b). Factors

---

[1]The statute specifically states: "All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude

1  supporting a finding of unsuitability for parole include: the underlying offense was carried out in an

2  "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying

3  offense, of violence; a history of unstable relationships with others; and serious misconduct while

4  incarcerated.  Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n.

5  14 (Cal. 2008).

6          The California Supreme Court recently held that even where the commitment offense was

7  particularly egregious, reliance on this immutable factor may violate a petitioner's due process

8  rights.  *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008).  In *Lawrence*, the California Supreme

9  Court found that a commitment offense that had occurred over thirty years prior to the Governor's

10 reversal of a parole grant was no longer probative of the petitioner's current dangerousness.  The

11 *Lawrence* court found that the intervening twenty-four years in which petitioner, now age sixty-one,

12 had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the

13 circumstances that led to her criminality, her insight into her past criminal behavior, her expressions

14 of remorse, her realistic parole plans, the support of her family, and numerous institutional reports

15 justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment

16 offense" no longer probative of "her current threat to public safety, and thus provides no support for

17 the Governor's conclusion that petitioner is unsuitable for parole at the present time."  *Id*. at 1226.

18          **B.      State Court Decision**

19          After reviewing the record, the Court finds that the California Superior Court's application of

20 the some evidence standard was not objectively unreasonable.  *See* 28 U.S.C. § 2254(d)(1).  The Los

21 Angeles County Superior Court was the only State court to issue a reasoned opinion as the California

22 Court of Appeal and California Supreme Court issued summary denials in Petitioner's case.  By their

23 "silent orders" denying the petitions, the appellate and State supreme court are presumed to have

24 denied the claims presented for the same reasons stated in the lower court's opinion.  *Ylst v.*

25 *Nunnemaker*, 501 U.S. 797, 803 (1991).

26 _____

27 toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may
   safely be released to the community; and any other information which bears on the prisoner's suitability for release.

28 Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results
   in a finding of unsuitability." Cal. Code Regs., tit. 15, § 2402(b).

1    In rejecting Petitioner's claim, the Superior Court found that there was some evidence

2   supporting the Board's determination that Petitioner was unsuitable for parole based primarily on her

3   commitment offense. (Answer, Ex. B at 3-4). While the Superior Court found that the Board's

4   reliance on an unstable social history was erroneous,[2] the State court held that the commitment

5   offense standing alone was a sufficient basis upon which the Board could have found Petitioner

6   unsuitable for parole. (Id). In explaining how the commitment offense constituted some evidence of

7   unsuitability, the State court found that:

> Petitioner and her accomplice berated and beat Ms. Avilla and then held her
> head in shallow water until she drowned. They then left her body under a log in the
> forest area. Ms Avilla was terrorized by her assailants and then subjected to a
> prolonged, painful suffocation. This demonstrated an exceptionally callous disregard
> for her suffering. *See In re Scott* (2004) 119 Cal.App.4th 871, 892. The Petitioner
> attacked and drowned Ms. Avilla because she was dating the Petitioner's former
> boyfriend. There is no evidence on the record that suggest Ms. Avilla had harmed or
> threatened the Petitioner in any way. This was an extremely trivial motive for such a
> brutal murder...
> The Court finds that there is some evidence to support the Board's findings
> that the commitment offense demonstrated exceptionally callous disregard for human
> suffering and the motive was very trivial in relation to the offense. Cal. Code Regs.,
> tit. 15 § 2402, subs. (C)(1)(d) and (c)(1)(E). The Petitioner and her accomplice
> berated and beat Ms. Avilla and then held her head in shallow water until she
> drowned. They then left her body under a log in the forest area. Ms Avilla was
> terrorized by her assailants and then subjected to a prolonged, painful
> suffocation. This demonstrated an exceptionally callous disregard for her suffering.
> [citation]. The Petitioner attacked and drowned Ms. Avilla because she was dating
> the Petitioner's former boyfriend. There is no evidence on the record that suggests
> Ms. Avilla had harmed or threatened the Petitioner in any way. This was an
> extremely trivial motive for such a brutal murder...
> Here, it is clear that the nature of the commitment offense, alone, was
> sufficient to support the Board's finding of unsuitability. [citation]

20  (Answer Ex. B at 2-3).

21   Petitioner contends that the Board's characterization of the commitment offense as

22  particularly egregious is erroneous. State regulations permit consideration of the following factors in

23  determining whether the commitment offense favors the denial of parole: the offense was carried out

24  in a dispassionate and calculated manner, such as an execution-style murder; the victim was abused,

25  defiled or mutilated during or after the offense; the offense was carried out in a manner which

---

27   [2]Petitioner's second contention has no merit as the Superior Court expressly found the Board's reliance on having
    been a victim of abuse by her father as evidence of unstable social history erroneous. The State court found though that
28  irrespective of this error, the Board's decision was supported by some evidence as the Board would reached the same decision
    event absent this error. (Answer Ex. B at 3-4) (quoting *In re Dannenberg*, 34 Cal.4th 1061, 1100 (Cal. 2005)).

demonstrates an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation to the offense.  Cal. Code Regs., tit. 15, § 2402(c)(1).  Pursuant to California law, "all second degree murders by definition involve some callousness–i.e., lack of emotion or sympathy, emotional insensitivity, indifference to the feelings and suffering of others.  As noted, however, parole is the rule, rather than the exception, and a conviction for second degree murder does not automatically render one unsuitable."  *In re Smith*, 114 Cal.App.4th 343, 366 (Cal. Ct. App. 2003) (citations omitted); *see also People v. Nieto Benitez*, 4 Cal.4th 91, 102 (Cal. 1992) (stating "[s]econd degree murder is defined as the unlawful killing of a human being with malice aforethought, but without the additional elements–i.e., wilfulness, premeditation, and deliberation–that would support a conviction of first degree murder").  Thus, a showing of exceptional callousness, cruelty, or dispassion for human suffering requires evidence that "the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of second degree murder."  *In re Scott*, 119 Cal.App.4th 871, 891 (Cal. Ct. App. 2004); *see also In re Dannenberg*, 34 Cal.4th at 1095 (quoting *In re Rosenkrantz*, 29 Cal.4th 616, 683 (Cal. 2002) for the proposition that reliance on commitment offense as some evidence requires aggravating facts beyond the minimum elements of the offense).

As noted above, the motive for the crime is a factor to consider in determining whether the commitment offense favors the denial of parole.  Cal. Code Regs., tit. 15, § 2402(c)(1).  A motive is inexplicable or trivial where it "is one that is unexplained or unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim and serves no other discernible purposes.  A person whose motive for a criminal act cannot be explained or is unintelligible is therefore unusually unpredictable and dangerous."  *In re Scott*, 119 Cal.App.4th at 893 (further noting that "to fit the regulatory description, the motive must be materially less significant (or more 'trivial') than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of a danger to society if the prisoner is released than is ordinarily presented"); *see also In Barker*, 151 Cal.App.4th 346, 374 (Cal. Ct. App. 2007) (quoting *in re Scott*, 119 Cal.App.4th at 893 for the proposition that, "[g]iven the high value our society places upon life, there is no motive for unlawfully taking the life of another human being that could not reasonably be

1    deemed 'trivial.' The Legislature has foreclosed that approach, however, by declaring that murderers

2    with life sentences must 'normally' be given release dates when they approach their minimum

3    eligible parole dates").

4           Here, as the Superior Court noted, the record illustrates that Petitioner and her accomplices

5    lured the victim to a stream in the forest where Petitioner held the victim's head down in shallow

6    water until the victim drowned.  While Petitioner contends that the victim died instantaneously,

7    evidence in the record disputes this argument as a witness heard the victim cry for help while

8    Petitioner drowned her.  The record also illustrates that the crime was motivated by the victim's

9    romantic relationship with Petitioner's former boyfriend and Petitioner's jealousy of the victim's

10   popularity with boys.  As touched upon by the State court, the record also supports the finding that

11   Petitioner tortured the victim prior to her death by verbally berating her as to reduce her to tears,

12   beating the victim, and cutting her hair.  Thus, the record contains ample evidence upon which the

13   State court could have found that the crime was so heinous as to be probative of Petitioner's current

14   dangerousness at the time of the hearing.  *See In re Dannenberg*, 24 Cal.4th at 1095 (noting that

15   commitment offense, where husband drowned or left wife to drown after striking multiple blows,

16   was an especially callous and cruel murder that went beyond the minimum elements of second

17   degree murder).

18          In briefs submitted to the Court, Petitioner  attempts to mitigate her culpability for the crime,

19   citing her age when she committed the crime.  Petitioner contends that crimes committed by

20   juveniles are not probative of their current dangerousness as those crimes are less predictive of future

21   crimes than those committed by adults.  However, the record shows that Petitioner was eighteen

22   years old when she committed the murder, making Petitioner's argument inapplicable to her case.

23   Similarly, Petitioner's argument regarding her current age is unavailing as thirty-nine would not

24   constitute an age that reduces the probability of recidivism.  Petitioner's case is distinguishable from

25   cases where age is a suitability factor.  *See In re Lawrence*, 44 Cal.4th at 1225 (sixty-one year old

26   petitioner); *see also In re Roderick*, 154 Cal.app.4th 242, 278 (Cal. Ct. App. 2007) (seventy-three

27   years of age at time of parole denial).

28   \\\

1      The State court rejected Petitioner's attempt to minimize her crime, finding that the crime

2   was so heinous that it alone could constitute some evidence of current dangerousness.  The

3   *Lawrence* court itself noted that there were some circumstances where reliance on a commitment

4   offense would comport with due process, such as where the conviction offense was so heinous,

5   atrocious, or cruel that the gravity of the crime itself established current dangerousness.  *Id*. at 1228.

6   Furthermore, the *Lawrence* court observed that a discipline-free record while incarcerated does not

7   automatically render the commitment offense unpredictive of current dangerousness.  *Id*. (citing

8   *Lawrence*'s companion case, *In re Shaputis*, 44 Cal.4th 1241, 1259-1260 (Cal. 2008), in concluding

9   that lack of insight into the commitment offense rendered aggravating factor of the crime probative

10  of petitioner's current dangerousness such that Governor's reversal of parole was neither arbitrary or

11  capricious despite an inmate's discipline-free record during incarceration).

12      The Court notes that "a federal court may not issue the writ simply because the court

13  concludes in its independent judgment that the relevant State court decision applied clearly

14  established federal law erroneously or incorrectly. Rather, that application must also be

15  unreasonable." *Williams*, 529 U.S. at 411.  The State court's finding, that the crime was so heinous

16  that it is sufficient by itself to support a finding of suitability, was not objectively unreasonable as the

17  evidence showed that the victim was lured to an isolated area, the victim was physically and

18  emotionally abused prior to her death, Petitioner held the victim's head in shallow water while the

19  victim cried for help, and Petitioner hid the body after the victim died.  The "some evidence standard

20  is minimal, and assures that 'the record is not so devoid of evidence that the findings of the

21  disciplinary board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting

22  *Hill*, 472 U.S. at 457).  Thus, while the Court acknowledges that there is evidence in the record to

23  support a finding that Petitioner has rehabilitated, as noted by the Board in its discussion of

24  Petitioner's post-incarceration history, there is also evidence upon which a State court could have

25  reasonably concluded that the commitment offense was so heinous that it was probative of

26

27

28

Petitioner's current dangerousness.[3]  The precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the parole board.  *See, e.g., Shaputis*, 44 Cal. 4th at 1260.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:   August 4, 2009**          **/s/ John M. Dixon**
                    UNITED STATES MAGISTRATE JUDGE

---

[3]Consequently, the Court also rejects the merits of Petitioner's third ground for relief as relying solely on the commitment offense in this case was not objectively unreasonable.  However, the Court notes that Petitioner's argument that the Board's consideration of her unverified parole plans was arbitrary and capricious is erroneous.  California regulations expressly set parole plans as a factor that the Board may consider in determining suitability.  *See* Cal. Code Regs., tit. 15, § 2402(d)(8).  Additionally, the regulations gives the Board the discretion to consider "all relevant, reliable information available."  *See* Cal. Code Regs., tit. 15, § 2402(b).